IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DIVERSI-PLAST PRODUCTS,<br>a Minnesota corporation,<br><br>               Plaintiff,<br><br><br>      vs.<br><br><br>BATTENS PLUS,<br>a California corporation,<br><br>              Defendant. | ORDER and MEMORANDUM<br>DECISION<br><br><br><br><br><br><br>Case No. 2:04-CV-01005-TC-DN |

Plaintiff, Diversi-Plast Products, Inc. ("Diversi-Plast"), is the owner of United States Patent Number RE39,825 (the "'825 Patent"). The '825 Patent discloses a tile roof system that allows ventilation and water drainage under the tiles. The Defendant, Battens Plus, Inc. ("Battens Plus"), sells a product that Diversi-Plast alleges infringes claim two of the '825 Patent. Battens Plus and Diversi-Plast dispute how several terms of the second claim of the '825 Patent should be construed.

The parties have submitted briefs on claim construction and a hearing was held on September 4, 2008. This Order addresses the construction of the disputed claims.

**BACKGROUND**

The '825 Patent is a reissue of U.S. Patent No. 6,357,193 (the "'193 Patent") that originally issued in 2002. The original complaint filed in this case on October 29, 2004, alleged

infringement under the '193 Patent.  On June 9, 2006, the Honorable Paul Cassell held a hearing

where he gave the parties a proposed claim construction order for the '193 Patent.  Judge Cassell

reviewed the proposed order with the parties but stayed the case pending the reissue of the '193

Patent.  The '193 Patent reissued as the '825 Patent on September 11, 2007.  Diversi-Plast

amended its complaint, asserting infringement of the '825 Patent.  Now before the court is the

proper construction of certain terms used in claim two of the '825 Patent.  Claim two is set out

below, with the disputed terms underlined[1]:

> 2. A tile roof system, comprising in combination: an overlayment; a rigid tile; and a
> batten disposed between the tile and the overlayment, the batten comprising: at least one
> layer comprising <u>generally planar first plies</u> and a second ply, the <u>first and {second plies}</u>
> <u>cooperating</u> to define a multiplicity of passages extending generally transversely to a
> longitudinal axis of the batten, and in which the second ply includes a <u>multiplicity of</u>
> <u>cross plies extending between the first plies</u>.

U.S. Patent No. RE39,825 col.5 (filed Mar. 19, 2004) (emphasis & deleted portions omitted).

The parties agree that claim two includes three elements: (1) overlayment, (2) tile, and (3)

batten.  The parties further agree that one of ordinary skill in the art would understand

"overlayment" to be material installed upon a roof deck; "tile" to be roofing tile; and a "batten" is

a spacer which spaces tiles from roofing materials.

The parties disagree over the meaning of the batten-related terms "generally planar first

plies," "second plies," "multiplicity of cross plies extending between first plies," and "the first

and second plies cooperating."

---

[1]Braces { } designate a separate disputed term located within an underlined disputed
term.

2

## ANALYSIS

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996)).  Claim construction is a question of law. Markman, 52 F.3d at 979.  "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).  When determining how a person of ordinary skill in the art would understand terms, the terms should be considered "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.  In addition to the claim terms and specification, courts should also refer to the prosecution history where appropriate.  See  Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361, 1367 (Fed. Cir. 2004).

During the claim construction process, a court must bear in mind that "[w]hen claims are amenable to more than one construction, they should, when reasonably possible, be interpreted to preserve their validity." Modine Mfg. Co. v. United States Int'l Trade Comm'n, 75 F.3d 1545, 1557 (Fed. Cir. 1996).

The main dispute between the parties is based on the construction of the term "ply." Diversi-Plast says the proper construction for "ply" is "section" while Battens Plus believes "ply" means "layer."

The court finds the available intrinsic evidence to be adequate and unambiguous.  The court has also taken into consideration Judge Cassell's construction of the disputed terms in the

'193 Patent where those terms remained the same in the '825 Patent.

**"generally planar first plies"**

Diversi-Plast asserts that "generally planar first plies" should be construed as "spaced apart and distinct outer planar sections."  Battens Plus proposes that "generally planar first plies" means "two or more generally planar layers."  According to Battens Plus, the plain and ordinary meaning of ply is a layer and no basis exists to define ply as a section.  Diversi-Plast argues that the specification and claims define ply and layer differently because ply is recited as a component of a layer.  Diversi-Plast also contends that nothing in the file history contradicts that the claims and specification differentiate a ply from a layer.

The court agrees with Diversi-Plast and construes this term as "spaced apart and distinct outer planar sections."  "We begin our claim construction analysis with the words of the claim itself."  Mars, Inc. v. H.J. Heinz Co., L.P., 377 F.3d 1369, 1373 (Fed. Cir. 2004) (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms."  Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (citations omitted).  Here, the claim language specifically states a batten is "at least one layer comprising generally planar first plies and a second ply . . . ."  '825 Patent col.5 l.36-37.  The use of the terms plies and ply to define the term layer within the claim provides a solid foundation for the construction of these terms.  See Phillips, 415 F.3d at 1314 (citing Mars, 377 F.3d at 1374) (claim term "ingredients" construed in light of the use of the term "mixture" in the same claim phrase).  Because the term ply is used in the same claim phrase as the term layer, ply must be read in context and be construed in relation to layer.

The specification supports Diversi-Plast's construction.  The specification describes three embodiments shown in the drawings:

> One embodiment of two layers of layer 34 is depicted in FIG. 4 generally as layers 50. Each layer 50 includes planar plies 52 and 54 and convoluted ply 56.  Convoluted ply 56 is disposed between and bonded to (or otherwise cooperates with) planar plies 52 and 54 to define a multiplicity of air channels 58 therebetween.

> Another embodiment of layer 34 is depicted in FIG. 5 generally as layer 60.  Layer 60 includes planar plies 52 and 54 and second ply 62.  Second ply 62 includes a multiplicity of cross-plies 64.  Cross-plies 64 extend generally perpendicular (or otherwise transversely) between planar plies 52 and 54.  Thus, planar plies 52 and 54 and second ply 62 cooperate to define a multiplicity of channels 58 therebetween.

> Referring to FIG. 6, yet another embodiment of layers 34 is depicted generally as four layers 70.  Each layer 70 includes planar ply 52 and convoluted ply 56.  Planar and convoluted plies 52 and 56 are bonded to (or otherwise cooperate with) each other to define a multiplicity of channels 58 therebetween.  Layers 70 may be stacked such that convoluted plies 56 abut, thereby defining another multiplicity of channels 58 therebetween.

'825 Patent col.5 l.14-34, fig. 4-6.

Each of these embodiments has at least one layer that includes either plies or a ply.  Id. As discussed, the specification and claim language support a construction showing that a ply or plies are components or parts of a layer and that ply is therefore not the same as layer.  The court finds nothing in the prosecution history that would change the interpretation of ply or layer in the specification or claims.

The court is persuaded in light of the specification and the claims that one of ordinary skill in the art would conclude that the first plies are distinguishable planar structures spaced apart within a layer.  These planar structures could be interpreted as parts, pieces or sections of a layer.  The court chooses sections from this list of synonyms to interpret the term plies. Accordingly, the court agrees with Plaintiff that the "generally planar first plies" are "spaced

apart and distinct outer planar sections."

**"second plies"**

Diversi-Plast contends that "second plies" should be construed as "distinct inner sections." Diversi-Plast argues that "second plies" are adequately discussed in the specification and depicted in Figure 5 as inner sections of a batten that are distinct from and located between the first plies. Battens Plus contends that if ply is construed to mean layer, then a second ply would mean "one or more second layers." Battens Plus argues that the second ply must be a layer and not a collection of separate cross plies.

The court concludes that the second ply is a distinguishable structure between the first plies. See '825 Patent col.5 l.20-27, fig. 5. Battens Plus' contention that a second ply should be defined as one or more layers fails because Battens Plus' construction is premised on construing ply as layer, a construction the court has not adopted. Accordingly, the court construes "second ply" as a "distinct inner section."

**"multiplicity of cross plies extending between first plies"**

Diversi-Plast contends that only "cross piles" within "multiplicity of cross plies extending between first plies" should be construed because the additional words "have ordinary meanings and are not part of an actual dispute." Diversi-Plast proposes that "cross piles" should be construed as "distinct transverse sections of a second ply." Diversi-Plast argues that the specification indicates that the second ply includes a multiplicity of cross-plies; the cross-plies are part of the second ply and are distinct from the outer first plies; and the specification describes the cross plies as extending generally perpendicular or transversely between the first piles. Battens Plus maintains that this term be construed as "a multiplicity of distinct segments

6

of a second ply which extend between the first plies." Battens Plus contends that Diversi-Plast's use of the term "transversely" is distinguishable from the term "generally perpendicular" based on the language of the specification.

The court construes "cross plies" as "distinct transverse sections of a second ply." The parties generally agree to the interpretation of this term but not on the use of the term "transverse." Because claim two states that the first and second plies cooperate to "define a multiplicity of passages extending generally transversely" ('825 Patent col.5 l.38-39), and the passages are created by the cross plies, the sections creating those passages would also be generally transverse. The specification also supports the concept of transverse sections.

> Another embodiment of layer 34 is depicted in FIG. 5 generally as layer 60. Layer 60 includes planar plies 52 and 54 and second ply 62. Second ply 62 includes a multiplicity of cross-plies 64. <u>Cross-plies 64 extend generally perpendicular (or otherwise transversely) between planar plies 52 and 54.</u> Thus, planar plies 52 and 54 and second ply 62 cooperate to define a multiplicity of channels 58 therebetween.

'825 Patent col.5 l.20-27, fig. 5 (emphasis added).

Here, the term transversely is used to broaden the embodiment beyond just perpendicular sections. Accordingly, the court construes this term as a "multiplicity of distinct transverse sections of a second ply extending between first plies."

**"the first and second plies cooperating"**

Both parties agree that no additional construction of the term "cooperating" is necessary. Diversi-Plast contends that the remaining terms, "the first and second plies" have already been addressed in the sections above. Battens Plus advances the construction, "the two or more generally planar layers must cooperate with the one or more second layers" because it is consistent with the plain and ordinary meaning of the phrase and the specification.

Because "the first and second plies" have already been construed in the sections above and because the parties have agreed that the term "cooperating" does not need construction, the court will not construe this term.

SO ORDERED this 18th day of September, 2008.

BY THE COURT:

TENA CAMPBELL
Chief District Judge